## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Janis Reda, | Case No. 2:22-cv-00974-CDS-EJY |
| Plaintiff | **Order Denying Plaintiff's Request for Relief and Denying Defendant's Cross Motion to Dismiss** |
| v. | |
| Unum Life Insurance Company of America, | [ECF Nos. 30, 35] |
| Defendant | |

Plaintiff Janis B. Reda brings this action against defendant Unum Life Insurance for wrongfully denying her long-term disability benefits in violation of the Employment Retirement Income Security Act (ERISA). Compl., ECF No. 4. Reda filed an "opening brief" pursuant to Federal Rule of Civil Procedure 52(a)(1) requesting the court to find that the administrative record reflects that she needed assistance with activities of daily life (ADLs), such that Unum erred in its decision to deny her benefits. *See* Brief, ECF No. 30 at 12.[1] The matter is now fully briefed. *See* Resp., ECF No. 35; Reply, ECF No. 36. In Unum's response,[2] it asserts that Reda failed to meet her burden to prove that Unum abused its discretion. *See* ECF No. 35. Unum further requests that the court dismiss Reda's claims with prejudice and enter judgment in its favor. *Id.* at 3. For the reasons that follow, Reda's request is denied, and Unum Life Insurance's cross motion is denied as moot.

---

[1] In reviewing the plaintiff's brief challenging the denial of her benefits under ERISA, I follow the Ninth Circuit's precedent establishing the court's role at summary judgment and apply an abuse of discretion standard. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d. 917 (9th Cir. 2012).

[2] I interpret Unum's response filed to be a response and a cross-motion. But I note there are no separate points and authorities supporting a motion to dismiss filed with the response.

I.      **Background**[3]

Reda worked as a legal assistant for Lionel Sawyer & Collins, a Nevada-based law firm, before it petitioned for bankruptcy. ECF No. 4 at ¶¶ 8–9. Through her employment,[4] Reda participated in a long-term disability plan issued and administered by Unum Life Insurance Company of America. *Id.* at ¶ 10. Unum Life Insurance is an insurance provider and a plan administrator. *Id.* at ¶ 2.

The plan number at issue include 504693-0001, and policy number 522767. *Id.* at ¶ 10. Following a failed surgical procedure, Reda submitted a claim to Unum for benefits—namely, assistance with ADLs[5]—under the plan. ECF No. 4 at ¶¶ 11–12.[6] Unum approved her claim and provided assistance with ADLs for over two years. *Id.* at ¶¶ 12–14. It stopped providing Reda's benefits after this two-year period, on December 23, 2021, once a medical review led Unum to believe that she no longer needed them. *Id.* at ¶¶ 13–15.

Reda appealed the decision with Unum and submitted new medical records to show that she still needed the assistance. *Id.* at ¶¶ 16–21. Reda asserts that in submitting these medical records to Unum, her medical providers opined that she still required assistance with her ADLs because her condition had not improved since Unum made its original decision. *Id.* at ¶ 18. But Unum denied the appeal, prompting Reda to file this ERISA suit for improper denial of plan benefits. *Id.* at ¶¶ 25–31 (citing 29 U.S.C. § 502(a)(1)(B)). In her brief, Reda asks this court to find that, based on the administrative record, Reda did in fact need the continued assistance with ADLs that Unum declined to give. ECF No. 30 at 12 (citing Fed. R. Civ. Pro. 52(a)(1)).

---

[3] Unless otherwise noted, the court only cites to Reda's original complaint (ECF No. 4) to provide context to this action, not to indicate a finding of fact.
[4] Lionel Sawyer & Collins funded the plan. *See* A.R. 16236294 at 000070, 000082; 16349642 at 000069.
[5] While not defined in the opening brief, I interpret ADLs as "Activities of Daily Living." *See* A.R. 16236294 at 000087; A.R. 16349642 at 000087.
[6] The Unum claim numbers included: 16349642 and 16236294. *Id.* at ¶ 11, n. 1.

1  **II.    Administrative record[7]**

2      There are two claims in the administrative record. *See* Administrative Record (A.R.)

3  16236294; A.R. 16349642.[8] Reda completed and submitted a long-term claim form, dated May

4  30, 2019, where she indicated that she had a "back/legs/immobility" medical conditional, left hip

5  pain, and she first noticed these symptoms in August 2014. A.R. 16236294 at 000020. During a

6  June 2019 phone call between Unum's Long-term Care Benefits Specialist, Lisa Crosby and

7  Reda, Crosby inquired about Reda's claim, and Reda explained that Dr. Ruben Alexander was

8  her pain management doctor and that her primary care physician was Dr. Anne Kristensen. A.R.

9  16236294 at 000119. Further, Reda stated that she had a history of medical problems which

10 started in 2014 when she had her first hip replacement, but the reason why she filed a claim at

11 this time was because of a recent fall. *Id.* at 000119–220. Reda's medical records indicate that she

12 fell at home "because her left leg gave out on her." A.R. 16236294 at 000170.

13     **A.    Reda's long-term disability claim**

14         *1.    Reda's 2019 claim*

15     Reda submitted a claim for long term care benefits under the Unum Life Insurance

16 Policy's ADL loss provision. A.R. 16349642 at 000020. She claimed that some of her medical

17 conditions included "back/legs/immobility" and "left hip pain." A.R. 16236294 at 000020. On a

18 June 13, 2019 phone call, Unum interviewed Reda, and Reda explained that she was seeking

19 benefits due to her fall in May 2019, which caused her to be unstable. A.R. 16349642 at 000164–

20 165. Reda stated that she required assistance with the following: bathing (getting in and out of

21 the bath two days a week); dressing (putting on pants, underwear, socks, and shoes); and

22 transferring, toileting, and continence. *See id.* at 000165. On June 23, 2019, Unum scheduled a

23

24 _____

[7] The summary of facts are taken from the Administrative Record.

25 [8] Emily Wark, a senior benefits coordinator, explained in an email to Reda that she had two coverages under the same policy number 522767. *See* A.R. 16349642 at 000487. Wark further explained that Reda

26 purchased coverage in 1998 and additional coverage in 1999, thus the policy number 504693 is used administratively to show the ported coverage, but her two claims are managed and adjudicated under the original policy (522767). *Id.*

face-to-face assessment (benefit eligibility assessment) with Reda. A.R. 16236294 at 000363. In this assessment, it was noted that Reda needed to use armrests to complete sitting to standing, and while she did lose her balance, she did not need the assessor to physically help her complete the task. *Id.* During this assessment, it was determined that Reda needed assistance with bathing and dressing, but was independent with toileting, continence, and transferring. *Id.*

On July 15, 2019, Unum sent a letter approving Reda's long term care benefits, providing that these benefits were approved as of June 5, 2019. A.R. 16349642 at 000361. Reda received benefits under the Policy from 2019 until December 23, 2021, when Unum notified Reda that it found that she was no longer eligible for benefits. *See* A.R. 16349642 at 001422–1426.

### 2. *Policy Terms*

The policy-insuring clause places the burden of proving disability on the insured employee. In relevant part, it states that a monthly benefit will be provided if: (1) you became disabled; (2) you are receiving services in a long term care facility or assisted living facility; (3) you have satisfied your elimination period; and (4) a physician has certified that you are unable to perform two or more ADLs for a period of at least 90 days, or that you require substantial supervision by another individual to protect you and others from threats to health or safety due to Severe Cognitive Impairment. A.R. 16236294 at 000092; A.R. 16349642 at 000092.

The policy provides a "terms you should know" section, which defines "Activities of Daily Living (ADLs)" as:

> B[athing] - washing oneself by sponge bath; or in either a tub or shower, including the task of getting into or out of the tub or shower with or without equipment or adaptive devices.
> D[ressing] - putting on and taking off all items of clothing and any necessary braces, fasteners, or artificial limbs.
> T[oileting] - getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene.
> T[ransferring] - moving into or out of bed, chair, or wheelchair with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other supportive devices including mechanical or motorized devices.

C[ontinence] - the ability to maintain control of bowel or bladder function; or, when unable to maintain control or bower or bladder functions, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag).

E[ating] - feeding oneself by getting food into the body from a receptacle (such as a plate, cup, or table) or by a feeding tube or intravenously.

A.R. 16236294 at 000087; A.R. 16349642 at 000087.

The policy further provides that when an individual appeals a denied claim, Unum "will make a full and fair review of the claim and may require additional documents as it deems necessary or desirable in making such a review." A.R. 16236294 at 000105; A.R. 16349642 at 000105.

### 3. Unum Life Insurance denies Reda's claims starting in 2021

Once Unum Life Insurance approved Reda's 2019 claim, it continued to assess Reda's need for substantial assistance with her ADLs. *See generally* A.R. 16236294 at 000386 (long term care policy explaining that Unum is allowed to look at any of the policyholder's records that Unum believes has a bearing on the insurance at any reasonable time). Unum asserts that it contacted Reda on several occasions to obtain an update on her functionality and the care she was receiving in connection with her ADLs. *See* A.R. 16349642 at 001389–90; 000957; 000927–928; 000747–48; 000698–99; 000561–62; 000551–52. During an April 7, 2021 call, Emily Wark explained to Reda that Unum had only been getting one log in a week on the same day for both caretakers. A.R. 16349642 at 000551. Reda explained that is typically the only day she has someone come to help her in addition to family who may come in to help. *Id.* On a July 20, 2021 check-in call, Reda stated she can physically go to the restroom by herself and she only takes her phone into the bathroom with her in case she falls and needs to call her son. A.R. 16349642 at 001389. During this same call, she expressed that while it hurts to put on certain clothing (socks), and that transfers are generally difficult due to her left leg, she can complete the task of toileting. *Id.* at 001389–90. On a November 8, 2021 call, Reda explained to a new specialist

handling her claim that her certified nursing assistants came once a week to assist her and that her daughters also stop by to help her so there is no set schedule. *Id.* at 000927–928.

Unum referred this information to a medical consultant, Dr. Barry Gendron. A.R. 16349642 at 000967. Dr. Gendron noted that the office visits that Reda attended did not appear to support a level of impairment that would corroborate that she required substantial assistance with two or more ADLs. *Id.* In particular, Dr. Gendron referred to an August 18, 2021 visit with Dr. Bley (whom Reda visited while she was in Portland, Oregon). *See id.* at 001009. Dr. Bley noted that Reda had moderate activity level which included stationary bike and walking. *Id.* at 000967, 001011. Additionally, from the administrative record, it appears that Dr. Gendron attempted to call Reda's attending physician, Dr. Kristensen, to seek clarification regarding her opinion but was instructed to fax a request. A.R. 16349642 at 000995, 000986. In a December 16, 2021 fax to Dr. Kristensen, Dr. Gendron relayed his findings of Reda's medical history, including a recent visit with Dr. Bley in Oregon, that found Reda had a moderate activity level (stationary biking and walking). *Id.* at 000995. In response to Dr. Gendron's inquiry, on December 20, 2021, Dr. Kristensen signed a statement stating she agreed with Dr. Gendron's assessment that there was "inadequate support for the substantial/assistance in ADLs covered in her policy." A.R. 16349642 at 000991–993.

 Unum terminated Reda's benefits on December 23, 2021, A.R. 16349642 at 001400–1404, because there was insufficient information to support Reda's ongoing benefits under the ADL loss provision, and thereafter sent Reda a five-page letter explaining its decision. A.R. 16349642 at 001378–1382.

### 4. Reda's appeal

After the December 23, 2021 denial, Reda initiated an appeal of her claim denial. *See* A.R. 16349642 at 001392, 001394. Then, on February 10, 2022, Dr. Alexander completed an attending physician statement that he sent to Unum. A.R. 16349642 at 001431–1435. Dr. Alexander stated that Reda required substantial assistance with bathing, dressing, toileting, transferring,

continence, and ambulating/mobility, but not eating. *Id.* at 001432. Once Unum obtained the medical records from Reda's providers, it was referred to a nurse for review, and upon the nurse's review, it was referred to Dr. Gendron. *See id.* at 001509–12. After Dr. Gendron reviewed both Dr. Alexander's notes and most recent medical records, Dr. Gendron sent a letter through fax to Dr. Alexander on April 1, 2022, seeking assistance and information to re-evaluate Reda's ADLs. A.R. 16349642 at 001530. In this letter, Dr. Gendron explained Reda's medical history and includes information regarding Reda's ability to walk with an assistive device, use stationary bikes, and ability to drive. *See id.* at 001567. Moreover, Dr. Gendron explained that from his review of the clinical information, he cannot find support for Reda's inability to sustain all ADLs without the need for assistance if she used adaptive equipment. *Id.* He further stated that Reda's ability to spend substantial period alone is inconsistent with the need for assistance with her ADLs. *Id.* In a response to Dr. Gendron's inquiry, Dr. Alexander stated he did not agree with Dr. Gendron's assessment—explaining that Reda had maintained her functionality because of the help she has received, and that the goal was for Reda to maintain her ability to perform her ADLs, and without this assistance, he believed she would decline. *Id.*

Unum then referred the information in its file to an outside vendor for an independent medical review; it was assigned to Dr. Anette Carron, and she concluded that there was no support for the loss of bathing, dressing, toileting, transferring or continence from December 24, 2021 forward. A.R. 16349642 at 001584. Further, Dr. Carron's reasoning includes the review of Reda's medical history which indicates that she "lives alone most of [the] day." *Id.* After reviewing the opinions of Dr. Gendron and Dr. Carron, on April 22, 2022, Unum reaffirmed its prior decision to terminate Reda's claim and sent Reda a letter of this decision. A.R. 16349642 at 001589–1590. Reda then provided supplemental information from two doctors—Dr. Alexander and Dr. Robert Tait, an orthopedic surgeon. *See generally* A.R. 16349642 at 001602–06, 001619–1623. Unum then had Dr. Gendron and Dr. Carron review this new information, and both doctors confirmed it did not change their opinions. *Id.* at 001634–1635, 001638. In particular, Dr.

7

Carron noted that the "physician documents the need for home care but no need for 24-hour care." *See id.* at 001638. Further, there were no "findings that would support the need for assistance with bathing and dressing as of 12/24/21 ongoing." *Id.* Based on these opinions, Unum reaffirmed its decision to terminate Reda's claim on June 29, 2022. *Id.* at 001659–1660.

## III.    Legal standard

Generally, 29 U.S.C. § 1132(a)(1)(B) empowers district courts to review a challenged denial of benefits under ERISA. This provision allows a beneficiary to commence a civil lawsuit to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The applicable standard of review in challenges of an ERISA determination is dependent on the controlling plan's language. A district court will review a denial of benefits under a "de novo standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989). "Where an ERISA plan confers discretionary authority upon a plan administrator to determine eligibility for benefits, we generally review the administrator's decision to deny benefits for an abuse of discretion." *Nolan v. Heald College*, 551 F.3d 1148, 1153 (9th Cir. 2009).

The Ninth Circuit has summarized a court's role at summary judgment in reviewing a plan administrator's denial of disability under an abuse of discretion standard as follows:

> Under this deferential standard, a plan administrator's decision will not be disturbed if reasonable. This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.

> This abuse of discretion standard, however, is not the end of the story. Instead, the degree of skepticism with which we regard a plan administrator's decision when determining whether the administrator abused its discretion varies based upon the extent to which the decision appears to have been affected by a conflict of interest.

8

> While not altering the standard of review itself, the existence of a conflict of interest is a factor to be considered in determining whether a plan administrator has abused its discretion. The weight of this factor depends upon the likelihood that the conflict impacted the administrator's decision making. Where, for example, an insurer has taken active steps to reduce potential bias and to promote accuracy, the conflict may be given minimal weight in reviewing the insurer's benefits decisions. In contrast, where circumstances suggest a higher likelihood that the conflict affected the benefits decision, the conflict should prove more important (perhaps of great importance).

*See Stephan*, 697 F.3d. 917.

**IV.     Discussion**

Reda's plan and policy provided a monthly benefit for caregiver services if the plaintiff required substantial assistance with two or more of the six specific ADLs and actually received substantial assistance for those ADLs. A.R. 16236294 at 000092; A.R. 16349642 at 000092. The long-term disability plan at issue in this case provides that Unum has discretion to determine eligibility for benefits and to interpret the Plan's terms. A.R. 16349642 at 000086.

While no particular language is required, discretion can generally be granted by giving the administrator the power to construe uncertain terms and to make final benefits determinations, as in the long-term disability. *Feibusch v. Integrated Device Tech., Inc. Emp. Ben. Plan*, 463 F.3d 880, 884–85 (9th Cir. 2006) (listing discretionary language). Moreover, in the context of ERISA matters, the court will not overturn the administrator's decision under the abuse of discretion standard unless it is "arbitrary and capricious," meaning "the administrator's decision cannot be disturbed if it is reasonable." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011); *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3rd Cir. 2011) ("In the ERISA context, the arbitrary capricious and abuse of discretion standards of review are essentially identical."). Thus, the court reviews the plan administrator's determination applying the abuse of discretion standard.

In applying this abuse of discretion standard of review, a reviewing court should "consider all of the relevant circumstances in evaluating the decision of the plan administrator"

including weighing any conflict of interest as a factor in its review. *Pac. Shores Hosp. v. United Behav. Health*, 764 F.3d 1030, 1041–42 (9th Cir. 2014) ("In all abuse-of-discretion review, whether or not an administrator's conflict of interest is a favor, a reviewing court should consider 'all the circumstance before it,' in assessing a denial of benefits under an ERISA plan.").

### A. Reda did not satisfy her burden of proof.

To establish her disability, Reda had the burden to prove that she qualified under the policy. Specifically, because Reda submitted her claim under the first prong of the definitions provided for in the policy, she had to prove that she was unable to perform, without substantial assistance from another individual, at least two ADLs.

Reda asserts that the administrative record supports her argument, and that Unum made a mistake when it denied her benefits for ADLs. *See* ECF No. 30 at 2–3. Reda further asserts that Unum's decision entirely relied on medical records reviewers instead "of doctors that physically examined" her. *Id.* at 14. Reda also raises questions about Unum's thoroughness and accuracy of determining her benefits. *Id.* However, I find that the record here contains adequate evidence to support Unum's determination that Reda did not require assistance to complete two or more ADLs as required by the policy, so its determination was reasonable.

The court recognizes Reda's frustration, but Unum referred her case to doctors, Dr. Gendron and Dr. Carron, and to Nurse Whitefield. Once her case was referred to Dr. Gendron and Dr. Carron, both reviewed the medical records provided by Reda's doctors, who reached the same conclusion. Unum's actions seem reasonable. It would of course be "arbitrary and capacious" for Unum to simply give a brief overview of a claim without reviewing information provided by the claimant's providers, and immediately render a decision. But that is not what happened here. The administrative record shows that Unum went through an extensive investigation, and re-evaluation, to determine whether Reda met the requirements set out in its policy.

The administrative record also reflects that Unum reviewed the assessments provided by Reda's physicians and even after rendering a decision, it used its discretion to consider the follow-up information provided by Reda in support of her appeal. Reda next tries to argue that Unum relied on physicians that were "unqualified to evaluate" her "abilities and ignorant as to her most recent condition and corresponding abilities." ECF No. 30 at 15. To support her argument, she asserts that Dr. Bley only evaluated her once for a cough and was never asked to evaluate her need for assistance with ADLs. *Id.* This argument is unpersuasive. The record indicates that during her visit with Dr. Bley in August 2021, he noted that Reda had moderate activity level which included stationary bike and walking. A.R. 16349642 at 00967, 001011. Unum's decision to review and weigh Dr. Bley's medical evaluation of Reda was reasonable and her conclusionary argument does not support a finding that he was unqualified.

Reda also argues that Unum persuaded and misled Dr. Kristensen in checking a box on Unum's form because, at that time, Reda had not seen this particular doctor for seven months. While the administrative record indicates that Unum provided a form for Dr. Kristensen to check and complete, Dr. Kristensen still had the opportunity to disagree with Unum's findings. The administrative record reflects that Dr. Kristensen had previously treated Reda as her primary care physician, so it would be reasonable for Unum to trust Dr. Kristensen's determination as to Reda's condition. Reda choosing to selectively carve out parts of the administrative record does not help Reda meet her burden, especially considering the A.R. as a whole.

While I do not dimmish Reda's symptoms and medical history, it does not negate Reda's burden of proof required to qualify for long-term benefits as required under Unum's policy. *See* A.R. 16236294 at 000087; A.R. 16349642 at 000087. Indeed, the policy's terms are crucial, as "ERISA's principal function" is to "protect contractually-defined benefits" because "the plan . . . is at the center of ERISA." *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013) (internal quotation marks and citation omitted). "ERISA requires 'every employee benefit plan [to] be

established and maintained pursuant to a written instrument . . . specifying the basis on which payments are made to and from the plan.'" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (citation modified) (quoting 29 U.S.C. § 1102(a)(1), (b)(4)). Further, "[t]he plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA] . . . and ERISA provides no exemption from this duty when it comes time to pay benefits." *Id.* A participant's "claim therefore stands or falls by the terms of the plan, a straightforward rule of hewing to the directives of the plan documents that lets employers establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits." *Id.* (cleaned up). Moreover, as the Ninth Circuit has held, administrators are bound by objective evidence and cannot issue an award based on non-existent evidence; "conditioning an award on the existence of evidence that cannot exist is arbitrary and capricious." *Salomaa*, 642 F.3d at 678. Here, Unum complied with the terms of the policy and there is no evidence supporting their decision was arbitrary or capricious.

Reda tries to further support her position by asserting that Unum had a clear conflict of interest. *See* ECF Nos. 30, 36. "Call it a structural conflict or whatever you prefer," Reda argues, "it's grade school logic that Unum would prefer not to part with its precious dollars and paying for homecare requires it to." ECF No. 36 at 2. In response, Unum does not dispute that a "structural conflict" is present here. ECF No. 35 at 14. Even if there was a conflict, Unum contends that Reda still fails to meet her burden of proof because a structural conflict alone does not amount to a procedural violation because Reda must also show that the conflict affected the decision-making process. *Id.* at 14–15. I agree with Unum.

"[A] structural conflict of interest exists when an administrator acts as both the funding source and administrator of the plan," which "must be taken into account as a factor in determining whether an abuse of discretion occurred." *See Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1024 (9th Cir. 2008); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955,

963 (9th Cir. 2006). But a structural conflict is less clear where the plan administrator is not the employer itself, but rather a professional insurance company. *Burke*, 544 F.3d at 1025. Courts may give greater weight to a structural conflict when circumstances would "suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). In weighing this factor and reviewing the record, Unum, the plan provider and not the employer, provided Reda with continuous benefits under her policy, but ultimately made a decision after two years to discontinue such benefits after it reasonably re-evaluated Reda's medical condition and determined her condition no longer supported a finding that she required assistance with her ADLs.

The Ninth Circuit is clear that while a conflict of interest is a factor the court weighs, it must be shown that this conflict impacted the administrator's decision making. *See generally Stephan*, 697 F.3d at 921. Here, Reda has not provided sufficient support to show that Unum's decision making was impacted by the structural conflict. She merely asserts "it's not rocket science that insurance companies are in the business of making money, and paying claims does not make them money." ECF No. 36 at 2. However, Reda has not provided an indication that Unum had a history of biased claims administration. So while I weigh this structural conflict factor, it is not determinative in my decision.

Reda next argues that Unum misled her physician, Dr. Kristensen, and Unum misinformed its doctors that were evaluating her claims by limiting the scope of the questions asked. *See* ECF No. 30 at 15–16; ECF No. 36 at 2. However, I find these arguments unpersuasive. Just because Unum narrowed the scope of its investigation after denying Reda's claim does not signify they are misinforming medical personnel. For instance, Dr. Alexander, one of Reda's treating physicians, responded to Unum's inquiry noting their disagreement with Unum's doctor's opinion (Dr. Gendron). *See* A.R. 16349642 at 001567.

The administrative record supports Unum's decision. The physicians that Unum utilized in making its determination had reviewed the medical records provided by Reda, and also communicated with Reda's own physicians to get a full picture of Reda's condition in making its determination on whether Reda satisfied the ADLs requirement under its policy. I find that the actions taken by Unum were logical, reasonable, and supported by the medical history made available to it.

Though Reda argues that Unum mistakenly denied her claim, she fails to show how the denial was illogical, implausible, or without support in inferences that may be drawn from the facts in the administrative record. So Reda's motion is denied, and Unum's motion to dismiss is denied as moot.

**V.    Conclusion**

IT IS HEREBY ORDERED that Reda's request for relief **[ECF No. 30] is DENIED.**

IT IS FURTHER ORDERED that Unum's cross motion to dismiss and judgment **[ECF No. 35] is DENIED as moot.**

The Clerk of Court is kindly directed to enter judgment accordingly and to close this case.

Dated: December 19, 2025

_____
Cristina D. Silva
United States District Judge